## BUTLER *v.* STEWART.

FRAUD—EVIDENCE—SALE OF FRACTIONAL OIL ROYALTY.

   Claims of fraudulent misrepresentations incident to plaintiffs'.
   conveyance of their remaining fractional interest in oil royalty.
   on their 160-acre farm for $2,000, (1) as to knowledge of and
   failure to disclose information indicative of presence of oil,
   (2) that a defendant purchased such oil royalties regardless
   of the fact that the money so spent was merely lost in profitless
   investments, (3) that adjacent owners had sold to such de-
   fendant, and (4) failure to disclose knowledge of a "blow-out"
   on a nearby farm, *held,* not supported by record in suit to
   cancel conveyances.

Appeal from Oceana; Pugsley (Earl C.), J.  Sub-
mitted April 4, 1951.  (Docket No. 14, Calendar No.
45,048.)  Decided September 5, 1951.

Bill by Jack Butler and wife against J. Russell
Stewart and others to set aside conveyance of min-
eral rights, an accounting and other relief.  Decree
for defendants.  Plaintiffs appeal.  Affirmed.

*William T. McElwain* and *Warner, Norcross &
Judd* (*George S. Norcross* and *Harold S. Sawyer,* of
counsel), for plaintiffs.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for
defendants Stewart and another.

*R. Lee Browning,* for defendant Yabrove and oth-
ers.

REFERENCES FOR POINTS IN HEADNOTES
24 Am Jur, Gas and Oil §§ 25, 162.

*Thomas R. McNamara,* for defendants Russell and another.

*Gerald M. Meehan,* for defendants Gover and others.

*Goggin & Baker,* for defendant Wolcott.

*Fred W. File,* for defendant Carter Oil Company.

REID, C. J.   Plaintiffs filed their bill of complaint to rescind their conveyance of lands for fraud, and also prayed for cancellation of conveyances by the grantee, defendant Stewart Oil Company, to third parties (herein made defendants), for an accounting and for injunctive orders.   From a decree for defendants, plaintiffs appeal.

Plaintiff Jack Butler (referred to herein as plaintiff) has lived in Hart, Michigan, for about 40 years. For most of his life and until recent years he has been a blacksmith.   Since 1947, he has had arthritis and other ailments.   Since quitting blacksmithing he has been farming and he has owned farms in Oceana county.   He has been a horse trader and has dealt in real estate, fur, fruits and "everything mostly," and has kept himself informed as to what has gone on in the vicinity of Hart.   About 1944 and 1945 plaintiffs bought for $900 the lands in question herein, 160 acres located north of Hart, the soil of which was poor for farming.   Plaintiffs have not farmed very much on it.

In January, 1947, plaintiffs made an oil and gas lease with defendant Carter Oil Company, giving Carter Oil Company royalty interest in oil and gas produced on the 160 acres in question, plaintiff to receive 50 cents per acre and $\frac{1}{8}$ of the oil produced, if any.

Plaintiff Jack Butler testified he rode out to the 160-acre farm in question on July 15, 1947, and found some men drilling what plaintiff calls a core test or drill on his farm without permission of plaintiff and they failed to answer plaintiff's question as to whether they struck anything. There is no proof that such drilling showed presence of oil. It was not done by defendant Stewart Oil Company, whose grant of royalty is herein complained of, but was done by Carter Oil Company under plaintiffs' lease.

Plaintiff Jack Butler testified that on July 30, 1947, defendant J. Russell Stewart (representing the Stewart Oil Company) came to plaintiffs' house in Hart and sought to buy plaintiffs' fractional interest in oil royalty in plaintiffs' 160-acre farm in question. On that day defendant Stewart produced and plaintiffs signed and delivered to defendant Stewart, as representing the Stewart Oil Company, a mineral deed conveying the entire mineral interests of the Butlers to the Stewart Oil Company and defendant Stewart delivered to plaintiffs a check for $2,000, the agreed consideration.

The record discloses that Mrs. Butler was present at least during part of the conversation, and that after defendant Stewart had stated his proposition, in response to her husband's question, she approved of the proposition. Mrs. Butler was not sworn as a witness. Plaintiff Jack Butler was evasive and not highly reliable as a witness.

Plaintiff claims that defendant Stewart on July 30, 1947, made the following 3 misrepresentations to plaintiff as showing the background of the fraudulent concealment of knowledge by Stewart of the "gas blow-out" hereinafter discussed. Plaintiffs claim they relied and acted on said misrepresentations, i.e.:

1. That there was no oil or gas under plaintiffs' land in question. Plaintiffs claim that there was in

fact oil under plaintiffs' lands in question and that defendant Stewart on July 30, 1947, had information persuasive of that fact and that Stewart, having made statements as to absence of oil under plaintiffs' lands, became obligated to disclose his information indicative of presence of oil. This representation is supported only by testimony of plaintiff Jack Butler. It must be apparent that one seeking to purchase mineral rights does not do so if there is no possibility of the presence of such minerals. The Carter Oil Company having previously purchased an oil lease from plaintiffs, plaintiff Jack Butler must have had knowledge under all the circumstances shown in the testimony of the possibility of oil under his lands. This claimed misrepresentation is improbable, for otherwise Stewart would be in the inconsistent position of negotiating for an interest in what he in the same breath was saying did not exist. The testimony of J. Russell Stewart that he had no evidence there was any oil under plaintiffs' lands seems the more plausible in the light of the entire record. We find such misrepresentation was not made.

2. That the Stewart Oil Company, whom defendant Stewart represented, allocated certain sums each year to buy royalties regardless of the fact that the money for the most part was merely lost in profitless investments. Defendant Stewart admits saying to plaintiff that his company went all over the State buying royalties in different parts of the State where they had no leases and where there was a concentration of leases and that "a lot of it went down the drain." But plaintiff claims the statement by defendant Stewart of his company's habit of buying such royalties was intended to and did conceal from plaintiff, defendant Stewart's information and belief indicative of actual presence of oil on plaintiffs' lands in question. Plaintiff cannot be considered as believing that the money that Stewart

was paying him was purely a gift without any real consideration, or money merely handed out carelessly. Plaintiff is not supported in his claim as to Stewart making any misrepresentation in such particular. No deception is considered by us as proven.

3. That "most everybody behind you has sold to me," meaning that almost every owner of lands between plaintiffs' lands and "the lake" had sold to Stewart. It seems improbable that plaintiff was deceived or uninformed as to whether the owners back of him had made oil leases. We consider that plaintiffs have failed to prove this misrepresentation.

Plaintiffs claim that the misrepresentation by Stewart and his failure to disclose knowledge of a "blow-out" of a well drilled about July 13, 1947, by Carter Oil Company on the Thomascheski farm about 1½ miles from plaintiffs' lands in question, of sufficient force to require that the hole be cemented in, which blow-out would be of interest to any oil man, completed the fraud. Plaintiffs claim defendant Stewart knew of this blow-out but concealed his knowledge and information on that subject from plaintiffs. There seems to have been an excitement among people living in the general neighborhood of Hart because of the blow-out.

Plaintiff denies that on the day he closed the deal with defendant Stewart, he, plaintiff, knew anything about the blow-out. However, on cross-examination, plaintiff testified as follows:

"*Q.* Between July 15, 1947 and July 30, 1947, wasn't there some talk around the streets of Hart with respect to the Carter Oil Company having obtained a showing of gas on the Thomascheski farm?

"*A.* No, I don't know.

"*Q.* You didn't hear that at all?

"*A.* No.

"*Q.* Are you sure ?

"*A.* That was in 1947?

"*Q.* Yes, while the Carter Oil Company was core drilling.

"*A.* I don't remember.

"*Q.* They called it a gas blow-out. You heard about the—

"*A.* I heard there was something down in there. I didn't pay much attention to it. I wasn't interested in it.

"*Q.* People around the streets were talking about there having been a gas blow-out?

"*A.* Well, I had not been on the streets very much for 4 or 5 years.

"*Q.* You did hear something about it?

"*A.* I won't say I did and I won't say I didn't."

Witness Turnbull testified that the blow-out in question at the depth reached would not necessarily give any indication concerning lower levels, and, in effect, his testimony would indicate that when all the facts came to be known about the blow-out in question, the importance of the blow-out as indicating possible presence of *oil* on plaintiffs' farm, disappeared.

Whatever the value of the blow-out was as indicative of the presence of oil on plaintiffs' farm, plaintiffs failed to make affirmative proof of one element at least of the fraud they claim, which is plaintiffs' own ignorance of the blow-out. When plaintiff Butler testified he "won't say" he did or did not hear about it before he dealt with defendant Stewart, he failed of his requisite affirmative proof. Plaintiffs thus fail to prove their main contention which concerns the blow-out.

The trial judge, among other things, said:

"A further finding is that no one knew at that time [*i.e.,* at the time of the transaction complained of] that there was even a probability of oil under Butler's land, and that J. Russell Stewart did tell Butler

that his company had money allocated to buy mineral rights, or words to that effect. This, however, was not a false and fraudulent misrepresentation. J. Russell Stewart did further make some mention that he had bought other mineral deeds, and particularly from Spence, and that he expected to get more. This, in the opinion of the court, is more probable than the claim made by Butler that all behind or back of him had given mineral rights. This sounds to the court more like the language of Butler than that of Mr. Stewart. There was no fiduciary relationship between Butler and Stewart Oil Company or J. Russell Stewart at the time this purchase was made. Jack Butler knew at the time the mineral deed was given that core drilling operations had been going on in the Pentwater field, and particularly on his land, as he had been there and actually seen the same in operation, and he had made an unsuccessful effort to obtain information in regard thereto.  *   *   *

"The last and final stand taken by the plaintiffs that the failure of J. Russell Stewart to disclose to Butler the rumors he had heard about the 'blow-out' cannot be said to be the concealment of a material fact.  *   *   *

"The plaintiffs have failed to meet the burden of proof of establishing fraud by a preponderance of the evidence that will entitle them to a decree for an annulment of the mineral deed executed on July 30, 1947, or for any other equitable relief against any of the defendants."

A careful reading of the record convinces us that the trial judge arrived at the correct conclusion. The decree appealed from is affirmed. Costs to plaintiffs.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.